# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AADVENTURE PRODUCTS, INC., a California corporation,<br><br>                                    Plaintiff,<br><br>    vs.<br><br>SIMPLY SMASHING, INC., a California corporation,<br><br>                                    Defendant. | CASE NO. 07cv499 BTM(AJB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Defendant Simply Smashing, Inc. ("Defendant") has filed a motion to dismiss Plaintiff's seventh, eighth, and ninth causes of action for failure to state a claim.  Defendant has also filed a motion for summary judgment on Plaintiff's first cause of action for patent infringement.  For the reasons discussed below, the motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**, and the motion for partial summary judgment is **DENIED**.

## I. FACTUAL BACKGROUND

Plaintiff Addventure Products, Inc., is a California corporation that owns a patented process for compressing t-shirts into a variety of shapes. (Compl. at ¶¶ 1, 7.)  Many of these shapes are also protected by Plaintiff's design patents. (Compl. at ¶ 1.)  According to Plaintiff, Defendant, also a California corporation, entered into the compressed t-shirt

business and began selling "knock-offs" of Plaintiff's patented compressed t-shirt shapes at a deep discount. (Compl. at ¶¶ 2, 8.) On March 1, 2004, Plaintiff sued Defendant for infringement of its design patents. (Compl. at ¶¶ 3, 17.) The parties settled pursuant to a written settlement agreement ("Settlement Agreement") under which Defendant paid $25,000 to Plaintiff, agreed to stop making or selling any "Protected Designs" (as defined by the Settlement Agreement), and agreed to remove any of Plaintiff's "Protected Designs" from its website. (Id. at ¶¶ 19, 20.) The "Protected Designs" are identified in Exhibit A to the Settlement Agreement. (Ex. 7 to Compl.)

Plaintiff alleges that Defendant subseqeuntly breached the Settlement Agreement by making available on its website "Shape Sheets" which include nineteen of Plaintiff's "Protected Designs," and by continuing to make and sell identical copies and colorable imitations of several "Protected Designs." (Compl. at ¶¶ 23, 50.) Plaintiff describes Defendant as being engaged in a "widespread campaign of willful patent infringement and unfair competition" which is eroding Plaintiff's profit margins. (Compl. at ¶ 4.)

The Complaint asserts claims for (1) infringement of U.S. Patent No. 5,042,227; (2) infringement of U.S. Design Patent No. D441,282; (3) infringement of U.S. Design Patent No. D442,476; (4) infringement of U.S. Design Patent No. D451,009; (5) infringement of U.S. Design Patent No. D451,797; (6) infringement of U.S. Design Patent No. D456,244; (7) unfair competition in violation of Section 43(a) of The Lanham Act, 15 U.S.C. § 1125(a); (8) unfair competition in violation of Cal. Bus. & Prof. Code § 17200; (9) common law unfair competition; and (10) breach of contract.

## II. DISCUSSION

A. Motion to Dismiss

Defendant moves to dismiss Plaintiff's unfair competition claims on the ground that they fail to state a claim. As discussed below, for the most part, Plaintiff has sufficiently stated a claim for unfair competition under the Lanham Act, Cal. Bus. & Prof. Code § 17200, and common law.

1    Plaintiff's seventh cause of action asserts a claim of trade dress infringement
2 under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  To state a claim for trade
3 dress infringement, a plaintiff must plead (1) that its claimed dress is nonfunctional; (2)
4 that its claimed dress is either inherently distinctive or has acquired a secondary
5 meaning; and (3) that the defendant's product creates a likelihood of consumer confusion.
6 Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1258 (9th Cir. 2001).
7    Defendant argues that Plaintiff has failed to define its trade dress.  However, the
8 Complaint identifies the trade dress at issue as the "Protected Designs" set forth in
9 Exhibit A to the Settlement Agreement.  (Ex. 7 to Compl.)  Exhibit 7 lists the design patent
10 numbers and shapes of forty-five "Protected Designs."  For purposes of a motion to
11 dismiss, Plaintiff has sufficiently identified its claimed trade dress.
12   Although Plaintiff does not explicitly state that its claimed dress is nonfunctional,
13 that fact can be implied by the existence of the design patents.  "A design patent protects
14 the nonfunctional aspects of an ornamental design as shown in the patent." Elmer v. ICC
15 Fabricating, Inc., 67 F.3d 1571, 1577 (Fed. Cir. 1995).
16   The Complaint also alleges that its claimed dress is distinctive and has acquired
17 secondary meaning and that Defendant's infringement of the trade dress is likely to cause
18 consumer confusion.  (Comp. at ¶¶ 108-09.)  Defendant argues that many of the shapes
19 at issue are common or generic shapes that either cannot qualify as trade dress or
20 cannot satisfy the requirement of distinctiveness/secondary meaning.  These arguments
21 are better-suited for summary judgment.
22   Plaintiff's seventh cause of action also asserts a claim of false advertising under
23 the Lanham Act.  Defendant argues that this claim fails because Plaintiff has not identified
24 any false statement made by Defendant.  However, a plaintiff can maintain a claim for
25 false advertising under the Lanham Act even if an advertisement is not literally false, but
26 has misled, confused, or deceived the consuming public.  Southland Sod Farms v. Stover
27 Seed Co., 108 F.3d 1134, 1140 (9th Cir. 1997).  Plaintiff alleges that by displaying
28 Plaintiff's "Protected Designs" on its website, Defendant misled consumers into thinking

that Defendant was authorized to sell Plaintiff's "Protected Designs," causing confusion as to the origin of Defendant's goods.  (Comp. at ¶¶ 45-46, 111.)  These allegations are sufficient to state a claim of false advertising.

Plaintiff also asserts that Defendant violated the Lanham Act by "passing off" Plaintiff's "Protected Designs" as its own.  This claim fails as a matter of law.  "Reverse passing off" occurs when a "producer misrepresents someone else's good or services as his own."  Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 28 n. 1 (2003). Reverse passing off occurs "when one party purchases or otherwise obtains a second party's goods, removes the second party's name, and then markets the product under its own name."  Summit Machine Tool Mfg. Corp. v. Victor CNC Sys., Inc., 7 F.3d 1434, 1437 (9th Cir. 1993).   Reverse passing off can also occur when a defendant sells or offers for sale another's product that has been modified slightly and then labeled with a different name.  Id.

Here, however, Plaintiff does not claim that Defendant took Plaintiff's actual products and sold them as Defendant's own.  Instead, Plaintiff claims that Defendant sold its own products that infringed on Plaintiff's design patents and trade dress.  In Dastar, the Supreme Court held that the "origin of goods," within the meaning of the Lanham Act, refers to the producer of the tangible "goods" that are made available to the public.  Id. at 31.  "[T]he phrase 'origin of goods' is in our view incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain."  Id. at 32. Therefore, Plaintiff's "reverse passing off" claim fails to state a claim.  See CMSI, Inc. v. Pacific Cycle, Inc., No. C06-488 JLR, 2006 WL 2942794,  (W.D. Wash. Sept. 15, 2006) (holding that Plaintiff's reverse passing off claim failed because Defendant produced the scooters at issue, and, therefore, properly designated the "origin" of the scooters).

Plaintiff's eighth and ninth causes of action for unfair competition under Cal. Bus. & Prof. Code § 17200 and state common law state a claim because, as discussed above, Plaintiff has sufficiently pled trade dress infringement and false advertising.  The state claims are not preempted by federal patent law because they require additional elements

1  not found in federal patent law.  See Rodime PLC v. Seagate Tech., Inc., 174 F.3d 1294,
2  1306 (Fed. Cir. 1999); Summit, 7 F.3d at 1440.

B. Motion for Summary Judgment

Plaintiff's first cause of action alleges infringement of its utility patent.  Defendant contends that it is entitled to summary judgment on this claim because Plaintiff is equitably estopped from enforcing its utility patent against Defendant.  The Court finds that there is a triable issue of material fact as to whether equitable estoppel bars Plaintiff's patent infringement claim.

1. Pertinent Facts

The utility patent, U.S. Patent No. 5,042,227, was assigned to Novapak, Inc. ("Novapak"), in June 1991.  (Ex. A to Mason Decl.)  Novapak assigned the patent to Compaction Technologies LLC on December 28, 2002, who then assigned the patent to Plaintiff on October 3, 2005.  Id.

Defendant first learned of the utility patent in December 1998, when its president Tim Fruehe ("Fruehe") received a facsimile from John Corbino ("Corbino"), a representative of Graphix International ("Graphix"), which was the authorized representative of Novapak.  Corbino requested that someone call to discuss licensing. (Fruehe Decl. ¶ 6, Ex. B.)  Fruehe informed Corbino that he did not believe Defendant infringed the patent.  (Id. at ¶ 7.)  Fruehe then had numerous conversations with Corbino regarding how the two companies could work together, but the utility patent was not discussed.  (Id. at ¶ 8.)

On March 18, 1999, Defendant learned that one of its customers received a letter from Graphix which stated that Novapak owned U.S. Patent No. 5,172,629, which covered the compaction of t-shirts, and that Graphix had "started and will continue to vigorously protect [its] patent rights."  (Id. at ¶ 9.)  Defendant subsequently obtained an opinion letter, which was sent to Herbert Silver ("Silver") of Graphix on March 26, 1999.

1   The opinion letter stated that Defendant did not infringe either patent.  (Id. at ¶ 11.)
2   According to Fruehe, Silver approached him at an industry show on or about March 28,
3   1999, asked how the companies could work together, and "implied that the threatening
4   letters would stop."  (Id. at ¶ 12.)  However, on August 25, 1999, Defendant received a
5   cease and desist letter from Silver, who was then president of Compaction Technologies,
6   with an attached opinion letter stating that the utility patent and Patent No. 5,172,629
7   covered knitted textiles.  (Id. at ¶ 13, Ex. E.)  Silver requested that Defendant's legal
8   counsel contact his legal counsel.  (Fruehe Decl. ¶ 13.)

9   On October 20, 1999, Defendant's attorney received a letter from Silver, which
10  stated that his company was interested in entering into a license agreement with
11  Defendant and proposed a lump sum for settlement of Defendant's prior sales.  (Id. at ¶
12  14, Ex. F.)  In a letter dated November 1, 1999, Defendant's attorney declined the offer
13  and reiterated Defendant's position that it did not infringe any patent. (Id. at ¶ 15, Ex. G.)
14  Defendant's attorney also explained that Defendant would continue to use its processes
15  to manufacture and sell t-shirts.  Fruehe was not aware of any response to that letter.
16  (Fruehe Decl. ¶ 16.)

17  Between November 1, 1999 and the filing of Plaintiff's Complaint, Fruehe had no
18  contact with Corbino or Silver except cordial greetings at trade shows at which
19  Defendant's booths displayed compressed t-shirts and catalogs.  (Id. at ¶ 17.)  During this
20  time, Fruehe received no communications alleging that Defendant infringed the utility
21  patent.  (Id. at ¶ 18.)  The utility patent was removed from the Graphix catalog and
22  website in 2000, which Fruehe interpreted as an indication that the patent owners
23  believed the patent was unenforceable.  (Id.)

24  Fruehe claims that he relied on Silver's silence by expanding his business. (Fruehe
25  Dec. ¶ 20.)  In 1999, Defendant owned two machines it used to compress t-shirts, sold
26  475,000 units, and spent approximately $50,000 for marketing the company and its
27  products.  (Id.)  Since then, Fruehe has increased Defendant's production capabilities by
28  adding a compression machine every year until Defendant had six machines in 2003.

1  (Id.)  Since 1999, Fruehe has also increased the number of molds used by Defendant
2  from 15 to over 200, and has increased the marketing budget every year.  (Id.)  In 2006,
3  Defendant spent over $200,000 for marketing and sold over 1,900,000 units.  (Id.)

### 2. Equitable Estoppel

6  Equitable estoppel is cognizable as an equitable defense to a patent infringement
7  claim.  A.C. Aukerman Co. v. R.L. Chaides Const. Co., 960 F.2d 1020 (Fed. Cir. 1992).
8  The defendant must prove by a preponderance of the evidence that (1) the patentee
9  communicated something in a misleading way, either by words, conduct, or silence; (2)
10 the defendant relied upon that communication; and (3) the defendant would be materially
11 harmed if the patentee is later permitted to assert any claim inconsistent with his earlier
12 conduct.  Id. at 1041.

13  With respect to the first element, the question is whether the patentee's conduct
14 supported a reasonable inference that the patentee did not intend to press an
15 infringement claim against the alleged infringer.  Aukerman, 960 F.2d at 1042.  On
16 summary judgment, such inference must be the only possible inference from the
17 evidence.  Id. at 1044.

18  Here, the only reasonable inference from the facts before the Court is that
19 Novapak and Compaction Technologies did not intend to enforce the utility patent against
20 Defendant.  Defendant's November 1, 1999 letter restated Defendant's position that
21 Defendant was not infringing the utility patent and would continue to use its current
22 processes in the manufacture and sale of t-shirts.  This letter was followed by seven
23 years of silence.  During these seven years, Fruehe saw Silver and Corbino at trade
24 shows where Defendant openly displayed its compressed t-shirts and catalogs.  Silver
25 and Corbino were cordial to Fruehe and never brought up their claims of patent
26 infringement.  There were no further communications about the possibility of a licensing
27 agreement.  Indeed, in the November 1, 1999 letter, Defendant made clear that it was not
28 interested in pursuing the issue of licensing any further.

However, there is a question as to whether Defendant relied on Novapak and Compaction Technologies' conduct rather than on a business judgment of its own. Fruehe claims that he relied on Silver's silence in expanding his business and further claims that he would have acted differently if Novapak or Compaction Technologies had filed suit. However, courts have refused to grant summary judgment on the basis of such post hoc conclusory statements. See, e.g., Gasser Chair Co., Inc. v Infanti Chair Mfg. Corp., 60 F.3d 770, 776 (Fed. Cir. 1995); Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1558 (Fed. Cir. 1996).

Other than Fruehe's assertions of reliance, Defendant has presented no evidence that it relied on Silver's silence in deciding to expand its operations. Indeed, the evidence shows that during 1999, Defendant consistently insisted that its processes did not infringe Plaintiff's utility patent and informed Plaintiff that it would continue to manufacture and sell t-shirts. There is no evidence that Defendant did anything differently during the time period when Silver was asserting that Defendant was infringing the utility patent. Therefore, there is a triable issue as to whether Defendant expanded its business, relying on the fact that it would not be sued, or whether Defendant would have expanded its business anyway. See Gasser, 60 F.3d at 776 (holding that there was a triable issue as to reliance where the evidence showed that the defendant paid little attention to the plaintiff's complaints of infringement because the defendant believed the patent was invalid).

Accordingly, Defendant's motion for partial summary judgment is **DENIED WITHOUT PREJUDICE**.

### III.  CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss Plaintiff's seventh, eighth, and ninth claims is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's "reverse passing off" claim under the Lanham Act is **DISMISSED**. Defendant's motion for summary judgment as to the first cause of action is **DENIED WITHOUT**

**PREJUDICE**.

**IT IS SO ORDERED.**

DATED:  September 20, 2007

_____
Honorable Barry Ted Moskowitz
United States District Judge